OTHE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MIDDLETON MIXOLOGY LLC., | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 24 12287 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A, | ) | |
| | ) | |
| *Defendants*. | ) | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Middleton Mixology's Motion for Preliminary Injunction against Defendant Shenzhan Huazhi Technology Co., Ltd d/b/a HzSane ("HzSane") (Dkt. 37). In November 2024, Middleton filed suit against HzSane and twenty other Chinese e-commerce vendors for allegedly infringing on their '769 Patent by selling products in the United States with similar design features to the Modular Smoker. (Dkt. 1 ¶¶ 15–23). Following the Court's issuance of a Temporary Restraining Order, (Dkt. 15), Middleton moved for a preliminary injunction. For the following reasons, the Court denies Middleton's Motion [37].

**BACKGROUND**

**I.  Procedural Posture**

On November 30, 2024, Middleton filed a Complaint asserting patent infringement under 28 U.S.C. § 281 against the Defendant class and moved for a TRO. (*See* Dkt. 1 ¶¶ 24–30; Dkt. 5). On December 10, 2024, the Court issued a TRO, which prohibited the future sales and marketing of the allegedly infringing product. (Dkt. 15). On January 2, 2025, Middleton moved to convert the TRO into a preliminary injunction. (Dkt. 37).

1

## II. Alleged Infringement

Both Middleton and HzSane sell "smokers"—devices that infuse a smoky flavor into food and beverages. (Dkt. 1 ¶¶ 8–14). United States Patent No. 11,871,769 ('769 Patent), which was issued on January 16, 2024, (Dkt. 7 ¶ 4), gives Middleton exclusive rights to make, distribute, and sell its smoker design, the Modular Smoker, in the United States. (*Id.*). Middleton alleges that HzSane sells smokers in the United States that infringe on the design specifications protected by Middleton's '796 Patent. (Dkt. 1 ¶¶ 15–23). The accused product is a smoker for infusing smoke into flavor into food or beverages. (Dkt. 7 at 7).

Middleton claims that HzSane's smoker infringes at least on Claim 8 of the '769 Patent. (Dkt. 7 ¶ 6). Claim 8 states:

> A smoker for infusing smoke into flavor and/or taste of a beverage or food, the smoker comprising: a body member having a through bore extending from a first end of the body member to an opposite second end of the body member in a first direction; and an insert configured to permit smoke to pass therethough; wherein the through bore has opposing open ends along a longitudinal axis, wherein the through bore is configured to receive the insert via the first end and to retain the insert at a position between the first end and the second end, wherein the through bore and the insert are configured to define a chamber for receiving a combustible material between the insert and the first end, wherein the through bore is configured to permit a flow of smoke from the combustible material out the through bore at the second end of the body member, and wherein the second end of the body member is sized and configured to rest on a rim of a container to block the flow of air from the container where a surface of the second end of the body member contacts the rim.

(Dkt. 70-3, Middleton's Exhibit 3). On July 2, 2025, the Court held an evidentiary hearing to assess HzSane's expert witness, Randy Clarksean. (Dkt. 108).

2

**LEGAL STANDARD**

A defendant is liable for patent infringement if it, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States and patent invention during the term of the patent thereof." 35 U.S.C. § 271(a). The Patent Act authorizes courts to grant injunctions to prevent violations of patent rights. 35 U.S.C. § 283.

To obtain a preliminary injunction, the moving party must show: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). On likelihood of success, Middleton must show that (1) it can likely prove that HzSane is infringing the '769 Patent and (2) that the '769 Patent will likely withstand HzSane's challenge to its validity. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Moreover, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

**DISCUSSION**

**I.     Likelihood of Success on the Merits**

To infringe on a patent, "each and every element of the claim must be practiced by the infringer." *Sonrai Sys., LLC v. AMCS Grp. Inc.*, 2017 WL 4281122, at *3 (N.D. Ill. Sept. 27, 2017) (citing *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915 (2014)). The analysis involves two steps: (1) "the court determines the scope and meaning of the asserted claims"; and (2) "the properly construed claims are compared to the allegedly infringing device." *Edge Sys.*

3

*LLC v. Aguila*, 635 F. App'x 897, 902 (Fed. Cir. 2015) (quoting *Mas–Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citations omitted).

To determine the meaning of the asserted claims, "the court establishes the scope and limits of the claim, interprets any technical or other terms whose meaning is at issue, and thereby defines the claim with greater precision than had the patentee." *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999). Furthermore, a court should not issue the preliminary injunction "if an alleged infringer raises a substantial question regarding either infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that the patentee has not shown lacks substantial merit." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010)

Middleton only asserts that HzSane infringed on Patent '769's Claim 8; therefore, HzSane need only show that its smoker device does not infringe Claim 8 of the '769 Patent to prevail.

   a. **"Through Bore"**

Determining whether there is "a substantial question" as to infringement requires the Court to construct "through bore" in Claim 8. (Dkt. 59 at 9); *see id.* at 1050. The parties have diverging interpretations of its meaning within the context of Claim 8. In relevant part, Claim 8 states that an infringing smoker must have:

> . . . a body member having a through bore extending from a first end of the body member to an opposite second end of the body member in a first direction; and an insert configured to permit smoke to pass therethough; wherein the through bore has *opposing open ends* along a longitudinal axis, wherein the through bore is configured to receive the insert via the first end and to retain the insert at a position between the first end and the second end . . .

(*Id.* at 3–4) (emphasis added). HzSane argues that its product does not have a through bore extending from one end to an opposing second end in a first direction. (*Id.*) Middleton's product has a through bore with opposing open ends along a longitudinal axis of the body member while

4

HzSane's product has a smoke channel with multiple apertures distributed around the conduit portion. (*Id.*) The accused product's bottom is closed, which, Defendant argues, means that it does not meet Claim 8's "opposing open ends" language. (*Id.*) Moreover, HzSane contends that, in its product, the smoke distributes around the glass, in a manner, which is distinct from Middleton's patented claim. (*Id.*)

Middleton offers little to rebut this interpretation. Instead, Middleton focuses on Claim 8's "comprising" language, without meaningfully engaging with HzSane's arguments regarding the "through bore"—which it claims insulates its product from Middleton's patent infringement allegations. (Dkt. 70 at 3). In doing so, Middleton correctly notes that a patent claim regarding an apparatus "comprising" various components means that the apparatus "includ[es] but is not limited to" those components. *See CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). This, however, does not explain how HzSane's device, which has a solid base fits the Claim 8 language, which states "wherein the *through bore* has *opposing open ends* along a longitudinal axis." *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021). If Claim 8 "include[es] but is not limited to" this component, the infringing product must include it. *Alliance Gaming Corp.*, 504 F.3d at 1360; *see also Teva Branded Pharm. Prods. R&D, Inc. v. Amneal Pharms. of New York, LLC*, 124 F.4th 898, 913 (Fed. Cir. 2024). Middleton does not sufficiently engage with HzSane's argument to persuade the Court to adopt its claim construction for purposes of the preliminary injunction analysis.

HzSane, therefore, presents a more compelling construction of "through bore," in the Claim 8 context. Applying Defendant's construction, there is a substantial question as to infringement. *AstraZeneca LP*, 633 F.3d at 1050. Middleton has, therefore, failed to establish a likelihood of success on the merits. Because Middleton failed to carry its burden as to the infringement of Claim

5

8, the Court need not delve into the merits further at this stage. *See e.g. Nat'l Waste & Recycling Ass'n v. Warrick Cnty. Solid Waste Mgmt. Dist.*, 2016 WL 1222353, at *18 (S.D. Ind. Mar. 29, 2016) (explaining that it is generally inappropriate for a court to conclusively decide upon the merits of plaintiff's allegations at preliminary injunction stage); *Am. Fam. Mut. Ins. Co. v. Roth*, 2011 WL 3056749, at *1 (N.D. Ill. Jan. 19, 2011) (at the preliminary injunction, the court does not render a "final judicial decision based on the actual merits of the controversy.").

## II.     Irreparable Harm

The Court must next determine whether Middleton will suffer irreparable harm if the Court does not grant its Motion. *Barnesandnoble.com, Inc.*, 239 F.3d at 1350. Middleton alleges that it is "likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm." (Dkt. 37 at 6). "An irreparable harm exists when, absent a preliminary injunction, the movant would be deprived of the only remedy available if it were to succeed on the merits of its claim." *Samsara Inc. v. United States*, 166 Fed. Cl. 457, 480 (2023); *see also Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) ("the injury must be of a particular nature, so that compensation in money cannot atone for it").

Middleton's alleged harm, in theory, could constitute irreparable harm. (Dkt. 37 at 6). For example, loss of goodwill could mean that the plaintiff loses customers because of the infringing product. *See Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 2013 WL 5973938, at *18 (C.D. Ill. Nov. 8, 2013). Reputational harm could occur if, for example, a defendant sells an infringing product, which is inferior to plaintiff's patented product. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994). This would happen if a customer mistakenly believed that a defendant's inferior, infringing product was actually the plaintiff's patented product and then associated the two products. *Id.* at 1557.

6

Typically, however, the plaintiff must demonstrate the harm based on the record at the time it moves for preliminary injunction, *see Pride v. City of Aurora*, 2023 WL 3569130, at *32 (N.D. Ill. May 18, 2023), which Middleton has not done. (*See* Dkt. 37). There is no support for its claim that HzSane's product is inferior and therefore causing reputational harm. Further, without support, Middleton claims that because HzSane is based in China that it is unlikely to have any assets in the United States. (Dkt. 70 at 2). Without coloring its claims with details in the record, the Court cannot find irreparable harm. *E. St. Louis Laborers' Loc. 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) (explaining that "speculative injuries do not justify" preliminary injunctions").

### III. Balance of Equities and Public Interest Considerations

Finally, we must balance the harm Middleton would experience without injunctive relief against the harm that HzSane would experience if a preliminary injunction were granted. *IgniteAction JV, LLC v. United States*, 174 Fed. Cl. 62, 72 (2024). In balancing the harms, the Court also considers the public interest. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021).

Here, because the Court determined that Middleton has established neither that it is likely to succeed on the merits nor that it has suffered irreparable harm, the balance of harms tips in HzSane's favor. *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, 121 F.4th 604, 633 (7th Cir. 2024) (holding that where movant has not established first two factors, the third tips in favor of the nonmovant); *see also Joe Sanfelippo Cabs Inc. v. City of Milwaukee*, 46 F. Supp. 3d 888, 894 (E.D. Wis. 2014).

Even if, however, Middleton had established a likelihood of success on the merits, it is not clear that this factor would favor Middleton. No doubt, if Middleton prevails, there would be

7

monetary harm, (*See* Dkt. 70 at 1–2), but on the issues of loss of goodwill and reputational harm, Middleton has made an inadequate showing. And monetary harm alone is insufficient to warrant an injunction. *Harmonia Holdings Grp., LLC v. United States*, 166 Fed. Cl. 727, 741 (2023). Accordingly, Middelton has not established that this extraordinary remedy is appropriate. *Tully v. Okeson*, 977 F.3d 608, 612 (7th Cir. 2020).

## CONCLUSION

For the reasons set forth above, Middleton's Motion for Preliminary Injunction [37] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: September 22, 2025